JS 44   (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Geraldine Carey<br>Leslie Leyba<br>Dawn Zaremski | International SOS<br>International SOS Assistance, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bucks County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>151 Medicare Act<br>152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholders' Suits<br>190 Other Contract<br>195 Contract Product Liability<br>196 Franchise | **PERSONAL INJURY**<br>310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers' Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>365 Personal Injury - Product Liability<br>367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | 625 Drug Related Seizure of Property 21 USC 881<br>690 Other | 422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>820 Copyrights<br>830 Patent<br>835 Patent - Abbreviated New Drug Application<br>840 Trademark<br>880 Defend Trade Secrets Act of 2016 | 375 False Claims Act<br>376 Qui Tam (31 USC 3729(a))<br>400 State Reapportionment<br>410 Antitrust<br>430 Banks and Banking<br>450 Commerce<br>460 Deportation<br>470 Racketeer Influenced and Corrupt Organizations<br>480 Consumer Credit (15 USC 1681 or 1692)<br>485 Telephone Consumer Protection Act<br>490 Cable/Sat TV<br>850 Securities/Commodities/ Exchange<br>890 Other Statutory Actions<br>891 Agricultural Acts<br>893 Environmental Matters<br>895 Freedom of Information Act<br>896 Arbitration<br>899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property | **CIVIL RIGHTS**<br>440 Other Civil Rights<br>441 Voting<br>[x] 442 Employment<br>443 Housing/ Accommodations<br>445 Amer. w/Disabilities - Employment<br>446 Amer. w/Disabilities - Other<br>448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>463 Alien Detainee<br>510 Motions to Vacate Sentence<br>530 General<br>535 Death Penalty<br>**Other:**<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br>560 Civil Detainee - Conditions of Confinement | **LABOR**<br>710 Fair Labor Standards Act<br>720 Labor/Management Relations<br>740 Railway Labor Act<br>751 Family and Medical Leave Act<br>790 Other Labor Litigation<br>791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>462 Naturalization Application<br>465 Other Immigration Actions | **SOCIAL SECURITY**<br>861 HIA (1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g))<br>864 SSID Title XVI<br>865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>870 Taxes (U.S. Plaintiff or Defendant)<br>871 IRS—Third Party 26 USC 7609 | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29  U.S.C. §621, et seq.

Brief description of cause:
Plaintiffs were discriminated against based on their ages.

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [X] Yes   [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
2/14/2022

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____Penllyn, PA 19422; Willingboro, NJ 08046; Philadelphia, PA 19116_____

Address of Defendant: _____Trevose, PA 19053_____

Place of Accident, Incident or Transaction: _____Trevose, PA 19053_____

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____02/14/2022_____   _____[signature] Caren Gurmankin_____   _____205900_____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A.   Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

*B.   Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Caren N. Gurmankin_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: _____02/14/2022_____   _____[signature] Caren Gurmankin_____   _____205900_____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Geraldine Carey, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| International SOS, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( X )

| | | |
|---|---|---|
| 2/14/2022 | *Carin Gust* | Plaintiffs Geraldine Carey, Leslie Leyba, Dawn Zaremski |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| GERALDINE CAREY<br>Penllyn, PA 19422 | : ; : : : | |
| and | : : | CIVIL ACTION NO. |
| LESLIE LEYBA<br>Willingboro, NJ 08046 | : : : | |
| and | : : | |
| DAWN ZAREMSKI<br>Philadelphia, PA 19116 | : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | |
| INTERNATIONAL SOS<br>3600 Horizon Boulevard<br>Trevose, PA 19053 | : : : : : | |
| and | : : | |
| INTERNATIONAL SOS<br>ASSISTANCE, INC.<br>3600 Horizon Boulevard<br>Trevose, PA 19053 | : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : : : | |

_____

**COMPLAINT**

## I.    INTRODUCTION

Plaintiffs, Geraldine Carey, Leslie Leyba, and Dawn Zaremski, bring this action

against their former employers, International SOS and International SOS Assistance, Inc.

("Defendants"). Plaintiffs were terminated because of their age in violation of the Age

Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA") and the

Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

Plaintiffs are joining in this action pursuant to Fed.R.Civ.P. 20(a) because they were all

subjected to Defendants' age discriminatory conduct, and their claims involve common

questions of fact and law.

Each Plaintiff seeks damages, including compensatory and liquidated damages,

and all other relief under federal and state laws prohibiting age discrimination in

employment, and as this Court deems appropriate.

## II.    PARTIES

1.    Plaintiff, Geraldine Carey ("Plaintiff Carey"), is an individual

and a citizen of the Commonwealth of Pennsylvania.

2.    Plaintiff Carey was born in August 1964.  She was fifty five (55) years old

and just about three (3) weeks away from her fifty sixth birthday at the time of her

termination.

3.    Plaintiff, Leslie Leyba ("Plaintiff Leyba"), is an individual and a

citizen of the Commonwealth of Pennsylvania.

4.    Plaintiff Leyba was born in November 1960.  She was fifty nine (59) years

old at the time of her termination.

5.    Plaintiff, Dawn Zaremski ("Plaintiff Zaremski"), is an individual and a

citizen of the Commonwealth of Pennsylvania.

6.    Plaintiff Zaremski was born in September 1969.  She was fifty (50) years

old, and under two (2) months shy of her fifty first birthday at the time of her termination.

7.    Defendant, International SOS Assistance, Inc., is a Washington

2

corporation with a principal place of business at 3600 Horizon Boulevard, Trevose, PA 19053.

8.      To Plaintiffs' knowledge and belief, Defendants' Trevose, PA location was considered Defendants' headquarters in the United States.

9.      Defendants' website states that, "International SOS is the world's leading provider of medical assistance, international healthcare and security services to U.S. clients."

10.     Plaintiffs were in Defendants' group that provided medical assistance services.

11.     Defendants' website highlighted its "24-hour Assistance Centre in Philadelphia".

12.     On the portion of Defendants' website dedicated to the United States, the first paragraph states, "For medical or security assistance please contact our Philadelphia Assistance Center".

13.     At all material times hereto, Plaintiffs worked out of Defendants' Philadelphia Assistance Center which was located at 3600 Horizon Boulevard, Suite 300, Trevose, PA 19053.

14.     Defendant, International SOS, controls and directs certain of Defendant International SOS Assistance, Inc.'s business operations and policies.

15.     Plaintiffs' Form W-2s were issued by Defendant International Assistance SOS, Inc.

16.     Employees of Defendants shared the same email address, internationalsos.com.  Upon information and belief, Defendant International SOS

3

controls, and has access to, electronic communications of Defendant International SOS Assistance, Inc.

17. Defendants provided documents regarding benefits to Plaintiff Zaremski entitled "International SOS Benefits Overview".

18. Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

19. At all times material hereto, Defendants employed more than twenty (20) employees.

20. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

21. At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

22. At all times material hereto, Plaintiffs were employees of Defendants within the meaning of the statutes which form the basis of this matter.

## III.   JURISDICTION AND VENUE

23. The causes of action which form the basis of this matter arise under the ADEA and the PHRA.

24. The District Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331.

25. The District Court has jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

26. Venue is proper in the District Court under 28 U.S.C. §1391(b).

4

27.     On or about September 17, 2020, Plaintiff Carey filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC").  This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

28.     On or about November 19, 2021, the EEOC issued to Plaintiff Carey a Dismissal and Notice of Rights.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

29.     On or about September 18, 2020, Plaintiff Leyba filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC").  This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "3" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

30.     On or about November 19, 2021, the EEOC issued to Plaintiff Leyba a Dismissal and Notice of Rights.  Attached hereto, incorporated herein and marked as Exhibit "4" is a true and correct copy of that notice (with personal identifying information redacted).

31.     On or about September 3, 2020, Plaintiff Zaremski filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC").  This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "5" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

32.     On or about November 19, 2021, the EEOC issued to Plaintiff Zaremski a Dismissal and Notice of Rights.  Attached hereto, incorporated herein and marked as Exhibit "6" is a true and correct copy of that notice (with personal identifying information redacted).

33.     Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

## IV.     **FACTUAL ALLEGATIONS**

34.     Plaintiff Carey started working for Defendants on or about August 27, 2012.

35.     As of the time of Plaintiff Carey's termination, she held the position of Coordinating Nurse.

36.     Plaintiff Leyba started working for Defendants on or about April 26, 2019.

37.     As of the time of Plaintiff Leyba's termination, she held the position of Coordinating Nurse.

38.     Plaintiff Zaremski started working for Defendants on or about April 1, 2013.

39.     As of the time of Plaintiff Zaremski's termination, she held the position of Quality Nurse Practitioner.

40.     At all times material hereto, Plaintiff Carey performed her job duties in a highly competent manner.

41.     At all times material hereto, Plaintiff Leyba performed her job duties in a highly competent manner.

42.     At all times material hereto, Plaintiff Zaremski performed her job duties in

6

a highly competent manner.  By way of example only, Plaintiff Zaremski was given the Excellence Award for All Core Values during her employment.

43.    As of around January 2019, Plaintiff Carey reported to Mark Kelly, Director of Nursing.  Kelly reported to Daniel Slaim, Regional Medical Director, who reported directly to Robert Quigley, Senior Vice President and Regional Medical Director.

44.    As of around January 2019, Plaintiff Leyba reported directly to Kelly.

45.    As of around June 2019, Plaintiff Zaremski reported directly to Slaim and to Mark Crawford, General Manager.  Crawford and Quigley reported to Neil Nerwich, Group Medical Director of Assistance for Defendants.

46.    As set forth herein, Defendants engaged in age discriminatory conduct towards their older employees, including Plaintiffs.

47.    Plaintiffs heard that Kelly said that Defendants needed to get rid of the old folks.

48.    To Plaintiffs' knowledge and belief, shortly after Kelly said that Defendant needed to get rid of the old folks, Defendants terminated an older employee who reported to Kelly.

49.    When Kelly talked to Plaintiff Carey about Defendants' termination of the older employee, he said that it was hard to teach old dogs new tricks.

50.    Plaintiff Carey was told that Kelly said that he wanted new blood.

51.    Plaintiff Leyba heard that Kelly said something to the effect that Defendants needed to get rid of their older employees and replace them with younger employees.

7

52. On or about April 30, 2019, David Owen, Vice President, Human Resources, referred to Plaintiff Zaremski using a German word that he told her meant "tyrant or gestapo."

53. Owen also told Plaintiff Zaremski that, according to her Myers Briggs' personality profile, as she aged, she became less tolerant of people, and that the same was a possible explanation for her behavior.

54. Owen did not provide Plaintiff with any basis for his comment that her personality profile showed that as she aged, she became less tolerant of people.

55. Prior to Owen's age discriminatory comments to Plaintiff, Plaintiff had not been given feedback indicating that she had performance issues.

56. When Plaintiff asked Owen about the basis for his comments, he told her not to worry about it.

57. Plaintiff Zaremski complained about Owen's age discriminatory comments to Defendants, including to Kelly and to Slaim.

58. To Plaintiff Zaremski's information and belief, Defendants did not take remedial and/or corrective action regarding her complaints of age discrimination.

59. On or about May 23, 2019, Owen met with Plaintiff and told her that he had heard that she was not happy with his comments in their previous discussion.

60. Plaintiff Zaremski understood Owen's comment that he heard that she was not happy with his comments that he made in their prior discussion to refer to, at least in part, his comment that as she aged, she became less tolerant of people.

61. Plaintiff Zaremski told Owen that she was not happy with what he said in their prior discussion.

8

62.     Owen also asked Plaintiff Zaremski to reflect on her future plans with Defendants.

63.     Owen told Plaintiff Zaremski that Defendants were going to remove her from her Nurse Manager position.

64.     Owen told Plaintiff Zaremski that Defendants were removing her from her position because her management style was not what Defendants were looking for.

65.     Owen told Plaintiff Zaremski that her only option to remain employed with Defendants was to take the position of Quality Nurse Practitioner, which was a lower-level position.

66.     Owen told Plaintiff that she had to give him an answer as to whether she would accept the lower-level position on the following day.

67.     When Plaintiff Zaremski asked questions about the Quality Nurse Practitioner position, including whether her compensation and/or benefits would change as a result of her being moved into the lower-level position, Owens told her that he did not have that information and that she needed to talk to another manager.

68.     Kelly told Plaintiff Zaremski that the job description for the Quality Nurse Practitioner position had not yet been approved at the time that Owen told her that it was her only option to remain employed.

69.     Plaintiff Zaremski complained to Defendants, including Kelly and Slaim, that she believed that Defendants were removing her from her Nurser Manager position due to her age and her complaints about Owen's age-based comments to her.

70.     Plaintiff Zaremski also said that she was concerned that the new position of Quality Nurse Practitioner would be the first to be eliminated if Defendants ever did

layoffs or job cuts.  Kelly and Slaim did not respond to Plaintiff's expressed concerns.

71.    With no other option to remain employed, Plaintiff Zaremski accepted the demotion to the Quality Nurse Practitioner position.  She started in the position in or around mid-June 2019.

72.    In connection with Plaintiff Zaremski's demotion, her job responsibilities were reduced; her supervisory responsibilities were removed from her; and, her compensation was negatively impacted, including that she no longer had potential to earn a bonus.

73.    To Plaintiff Zaremski's knowledge and belief, Defendants assigned job responsibilities that she had in her Nurse Manager position to substantially younger, less qualified employees.

74.    On or about October 16, 2019, Plaintiff Zaremski was given a two (2%) percent merit increase.

75.    Defendant did not give Plaintiff Zaremski any explanation as to why they gave her a minimal merit increase.

76.    Plaintiff Zaremski complained to Defendant, including Slaim, Kelly, and Dayo Azeez, Human Resources, that she had been singled out since she complained about Owen's age discriminatory comments to her.

77.    In response to Plaintiff Zaremski's complaint, Defendants denied that she had been singled out since she complained about Owen's age discriminatory comments and said that she needed to stop discussing that issue.

78.    Defendants did not provide Plaintiff Zaremski with an explanation as to why she received only a two (2%) percent salary increase.  They said only that they had

10

nothing but good feedback regarding her work, but that they could not justify giving her a larger salary increase.

79.     To Plaintiff Zaremski's knowledge and belief, Defendants gave larger salary increases to younger, less tenured employees.

80.     To Plaintiff Zaremski's information and belief, Defendant did not take remedial and/or corrective action regarding her complaints of age discrimination.

81.     On or about April 23, 2020, Defendant placed Plaintiff Leyba on furlough, effective immediately.

82.     Plaintiff Leyba was told only that she was being furloughed because there were not enough employees volunteered to be placed on "furlough."

83.      As of the time that Plaintiff Leyba was placed on furlough, approximately seventeen (17) employees in the position of Coordinating Nurse were not placed on furlough.

84.     To Plaintiff Leyba's information and belief, all of the employees in the position of Coordinating Nurse who were not placed on furlough were younger than she was, and many were substantially younger than she was.

85.     On or about April 24, 2020, Defendants placed Plaintiff Zaremski on furlough, effective immediately.

86.     Plaintiff Zaremski was told only that she was being furloughed because business was slow and her position was not critical.

87.     Plaintiff Zaremski told Defendants that she would be willing to take a Coordinating Nurse position in order to return to work.

88.     Defendants' response to Plaintiff Zaremski was that they could not place

11

her into a Coordinating Nurse position, as several employees in that position had been furloughed.

89.    Plaintiff Zaremski also said that it was her understanding that Quality Assurance employees, of which she was one since her demotion to Quality Nurse Practitioner, were being transferred to other positions instead of being furloughed, and asked if she could be transferred into another position.

90.    In response to Plaintiff Zaremski, Defendants said that they needed to temporarily reduce their staffing levels; that being placed on furlough was not a reflection of her performance; and, they could not reassign her to a Coordinating Nurse position because Coordinating Nurses were being furloughed.

91.    On or about April 29, 2020, Defendants placed Plaintiff Carey on furlough, effective immediately.

92.    Plaintiff Carey was told only that she was being furloughed due to business needs.

93.    As of the time that Plaintiff Carey was placed on furlough, approximately seventeen (17) employees in the position of Coordinating Nurse were not placed on furlough.

94.    To Plaintiff Carey's information and belief, all of the employees in the position of Coordinating Nurse who were not placed on furlough were younger than she was, and many were substantially younger than she was.

95.    On or about August 4, 2020, Defendants informed Plaintiff Leyba that her employment was terminated, effective August 1, 2020.

96.    Defendants informed Plaintiff Leyba that the reason for her termination

12

was "business disruption caused by the COVID-19 pandemic."

97.    On or about August 4, 2020, Defendants informed Plaintiff Carey that her employment was terminated, effective August 4, 2020.

98.    Defendants informed Plaintiff Carey that the reason for her termination was "business disruption caused by the COVID-19 pandemic."

99.    On or about August 4, 2020, Defendants informed Plaintiff Zaremski that her employment was terminated, effective August 1, 2020.

100.    Defendants informed Plaintiff Zaremski that the reason for her termination was "business disruption caused by the COVID-19 pandemic."

101.    While Plaintiffs were furloughed, they became aware that Defendants had recalled younger employees, including in the position of Coordinating Nurse, to return to work.

102.    While Plaintiff Carey was out on furlough, she told Kelly that she had heard that other nurses were brought back to work from furlough and asked why she had not been recalled to work.

103.    In response to Plaintiff Carey, Kelly responded only that she should not take it personally that she had not been recalled to work from furlough while other nurses had been recalled.

104.    While Plaintiff Zaremski was out on furlough, she had told Slaim that she had heard that employees with less service time at Defendants than she had were recalled to return to work while she remained furloughed.

105.    Plaintiff Zaremski again asked that Defendants bring her back to work in a Coordinating Nurse position so that she could return to her employment.

13

106. In response to Plaintiff Zaremski's requests, Slaim responded only that he passed along the same to Human Resources and that he would let her know if there were any changes.

107. Plaintiff Zaremski did not hear anything from Defendants about the possibility of being brought back to work, in any capacity, during her furlough and until she was notified of her termination.

108. Defendants did not offer Plaintiff Carey any other position that would allow her to remain employed.

109. Defendants did not offer Plaintiff Leyba any other position that would allow her to remain employed.

110. Defendants did not offer Plaintiff Zaremski any other position that would allow her to remain employed.

111. Defendants terminated Plaintiffs while retaining substantially younger, less qualified employees.

112. To Plaintiff's knowledge and belief, Defendants had open positions for nurses available shortly after their terminations.

113. Defendants' stated reasons for terminating Plaintiff Carey are pretextual.

114. Defendants' stated reasons for terminating Plaintiff Leyba are pretextual.

115. Defendants' stated reasons for terminating Plaintiff Zaremski are pretextual.

116. Plaintiff Carey's age was a motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff Carey, including subjecting her to a hostile work environment; placing her on furlough; and, terminating

14

her employment.

117.    Plaintiff Leyba's age was a motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff Leyba, including subjecting her to a hostile work environment; placing her on furlough; and, terminating her employment.

118.    Plaintiff Zaremski's age was a motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff Zaremski, including subjecting her to a hostile work environment; demoting her; placing her on furlough; and, terminating her employment.

119.    Plaintiff Zaremski's complaints of age discrimination were motivating and/or determinative factors in connection with Defendants' retaliatory treatment of Plaintiff Zaremski, including demoting her; placing her on furlough; and, terminating her employment.

120.    Defendants failed to prevent or address the discriminatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

121.    The retaliatory actions taken against Plaintiff Zaremski after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

122.    The discriminatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made

15

Plaintiffs believe that the conditions of employment had been altered and that a hostile work environment existed.

123. As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff Carey has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

124. As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff Leyba has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

125. As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff Zaremski has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

### COUNT I - ADEA

126. Plaintiffs incorporate herein by reference paragraphs 1 through 125 above, as if set forth herein in their entirety.

127. By committing the foregoing acts of discrimination against all Plaintiffs, and acts of retaliation against Plaintiff Zaremski, Defendants have violated the ADEA.

16

128.    Said violations were willful and warrant the imposition of liquidated damages.

129.    As a direct and proximate result of Defendants' violation of the ADEA, Plaintiffs have suffered the damages and losses set forth herein and have incurred attorney's fees and costs.

130.    Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

131.    No previous application has been made for the relief requested herein.

## COUNT II - PHRA

132.    Plaintiffs incorporate herein by reference paragraphs 1 through 131 above, as if set forth herein in their entirety.

133.    Defendants, by the above improper and discriminatory acts, have violated the PHRA.

134.    Said violations were intentional and willful.

135.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiffs have sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

136.    Plaintiffs are now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

137.    No previous application has been made for the relief requested herein.

17

## RELIEF

WHEREFORE, Plaintiffs seek damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically pray that the Court grant the following relief to the Plaintiffs by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against Defendants and in favor of the Plaintiffs in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiffs whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct;

(f)     awarding compensatory damages to Plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct;

(g)     awarding liquidated damages to Plaintiffs under the ADEA;

(h)     awarding punitive damages to Plaintiff Zaremski under the ADEA in connection with Defendants' retaliatory conduct;

18

(i)    awarding Plaintiffs such other damages as are appropriate under the ADEA and the PHRA;

(j)    awarding Plaintiffs the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(k)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE MATTIACCI LAW

Dated:    02/14/22                    BY:    _____
                                                      Caren N. Gurmankin (205900)
                                                      1525 Locust St., 9th Floor
                                                      Philadelphia, PA 19102
                                                      (215) 545-7676
                                                      (215) 565-2853 (fax)

                                                      Attorney for Plaintiffs,
                                                      Geraldine Carey
                                                      Leslie Leyba
                                                      Dawn Zaremski

19

# Exhibit "1"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

COMPLAINANT:                                                    :
                                                               :
**GERALDINE CAREY**                                            :         Docket No.
                                                               :
v.                                                             :
                                                               :
RESPONDENT:                                                    :
                                                               :
**INTERNATIONAL SOS ASSISTANCE, INC.**                         :
                                                               :

1.  The Complainant herein is:

    Name:              Geraldine Carey

    Address:           ███████████████

2.  The Respondent herein is:

    Name:              International SOS Assistance, Inc.

    Address:           3600 Horizon Blvd #300
                       Trevose, PA 19053

3.  I, Geraldine Carey, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my age (55), as set forth below.

**Discrimination**

**A.  I specifically allege:**

[1]        I was hired by Respondent on or about August 27, 2012.

[2]        I had almost eight (8) years of service at Respondent.

[3]        My birth date is August ██, 1964, and I am age fifty-five (55).

[4]    I consistently performed my job duties in a highly competent manner.

[5]    I last held the position of Coordinating Nurse.

[6]    I last reported to Mark Kelly (41[1]), Director of Nursing.  Kelly reported to Daniel Slaim (48), Regional Medical Director.  Slaim reported to Robert Quigley (62), Senior Vice President and Regional Medical Director.

[7]    In or about January 2019, I began reporting to Kelly.

[8]    I was the second oldest Nurse employee directly reporting to Kelly.

[9]    I heard that Kelly stated that Respondent needed to get rid of the "old folks."

[10]    I heard that Kelly wanted "new blood" at Respondent.

[11]    On numerous occasions, Kelly stated that you could not teach old dogs new tricks.

[12]    On or about April 29, 2020, in a phone call with Kelly and Dayo Azeez (35), Human Resources, Respondent placed me on "furlough," effective immediately.  The stated reason was business needs.

[13]    Respondent placed me on "furlough" because of my age.

[14]    Respondent assigned my job duties and responsibilities to younger employees.  I was more qualified to perform my job duties and responsibilities than the younger employees to whom my job duties were assigned.

[15]    I received no explanation, including the selection criteria, as to why I was placed on "furlough" and younger employees were not.

[16]    The following employees were retained and were not placed on "furlough."  I was more qualified to perform all of these employees' positions.

---

[1] All ages herein are approximations.

   a.  Jenna DeFilippo (28), Coordinating Nurse;

   b.  Sonia Mejia (31), Coordinating Nurse;

   c.  Erica Stanhope (29), Coordinating Nurse;

   d.  Sarah Underwood (31), Coordinating Nurse;

   e.  Lilian Rocha (35), Senior Coordinating Nurse;

   f.  Sarah Henderson (35), Coordinating Nurse;

   g.  Bridget Morris (37), Coordinating Nurse;

   h.  Carla Costa (36); Coordinating Nurse;

   i.  David Leitner (37) Coordinating Nurse;

   j.  Rochelle Graves (37), Coordinating Nurse;

   k.  Margaret DaLiosio (34), Coordinating Nurse;

   l.  Colin Descoteaux (34) Coordinating Nurse;

   m.  Alina Maris (38), Senior Coordinating Nurse;

   n.  Samantha Sherlock (39), Coordinating Nurse;

   o.  Philip Curtis (42), Senior Coordinating Nurse;

   p.  Amy Kervick (44), Senior Coordinating Nurse;

   q.  Stacey Perry (49), Coordinating Nurse.

[17]    I heard that the following employees were brought back to work after being placed on "furlough."  I was more qualified to perform all of these employees' positions.

   a.  Marissa Kozak (38), Coordinating Nurse;

   b.  Daniel Breen (38), Coordinating Nurse;

   c.  Jessica Dickerman (42), Coordinating Nurse;

   d.  Julie Clerkin (42), Coordinating Nurse;

  e. Olu Awobifa (49), Coordinating Nurse.

[18] On or about July 14, 2020, on a phone call with Kelly, I stated that I had heard that other Nurses were brought back to work after being placed on "furlough" and asked why I was not brought back to work. Kelly stated that I should not take it personally.

[19] I received no explanation, including the criteria, as to why I was not brought back to work after being placed on "furlough," and younger employees were.

[20] Respondent did not bring me back to work after placing me on "furlough" because of my age.

[21] On August 4, 2020, in a letter from Jodi VanDerveer (48), Vice President Human Resources, and on a phone call with Kelly and Jenna Watson (32), Human Resources, Respondent terminated my employment, effective August 4, 2020. The stated reason was "business disruption caused by the COVID-19 pandemic."

[22] Respondent terminated my employment because of my age.

[23] When I was terminated, Respondent retained the following younger employees in positions for which I was as, if not more, qualified.

  a. Jenna DeFilippo (28), Coordinating Nurse;

  b. Erica Stanhope (29), Coordinating Nurse;

  c. Sarah Underwood (31), Coordinating Nurse;

  d. Sonja Mejia (31), Coordinating Nurse;

  e. Colin Descoteaux (34), Coordinating Nurse;

  a. Margaret DaLiosio (34), Coordinating Nurse;

  b. Sarah Henderson (35), Coordinating Nurse;

  c. Lilian Rocha (35), Senior Coordinating Nurse;

    d.  Carla Costa (36), Coordinating Nurse;

    e.  Rochelle Graves (37), Coordinating Nurse;

    f.  Bridget Morris (37), Coordinating Nurse;

    g.  David Leitner (37), Coordinating Nurse;

    h.  Marissa Kozak (38), Coordinating Nurse;

    i.  Daniel Breen (38), Coordinating Nurse;

    j.  Alina Maris (38), Senior Coordinating Nurse;

    k.  Samantha Sherlock (39), Coordinating Nurse;

    l.  Philip Curtis (42), Senior Coordinating Nurse;

    m.  Julie Clerkin (42), Coordinating Nurse;

    n.  Jessica Dickerman (42), Coordinating Nurse;

    o.  Amy Kervick (44), Senior Coordinating Nurse;

    p.  Stacey Perry (49), Coordinating Nurse;

    q.  Olu Awobifa (49), Coordinating Nurse.

[24]      Respondent recently hired the following substantially younger employees in positions for which I was as, if not more, qualified.

    a.  Jenna DeFilippo (28), Coordinating Nurse;

    b.  Erica Stanhope (29), Coordinating Nurse;

    c.  Sonia Mejia (31), Coordinating Nurse;

    d.  Sarah Underwood (31), Coordinating Nurse;

    e.  Margaret DaLiosio (34), Coordinating Nurse;

    f.  Colin Descoteaux (34), Coordinating Nurse;

    g.  Carla Costa (36), Coordinating Nurse;

h.  Bridget Morris (37), Coordinating Nurse;

i.  Marissa Kozak (38), Coordinating Nurse;

j.  Daniel Breen (38), Coordinating Nurse;

k.  Samantha Sherlock (39), Coordinating Nurse;

l.  Julie Clerkin (42), Coordinating Nurse.

[25]    Respondent retained substantially younger employees when I was terminated.

[26]    Respondent assigned my job duties and responsibilities to younger employees.  I was more qualified to perform my position than the younger employees to whom Respondent assigned my job duties and responsibilities.

[27]    I had no opportunity or option to remain employed with Respondent.

[28]    Respondent recently terminated the following older employees: Louise Caskie (62), Coordinating Nurse; Leslie Leyba (59), Coordinating Nurse; Dawn Zaremski (50), Quality Nurse Practitioner.

[29]    Respondent has replaced older employees with, and assigned older employees' job duties to, substantially younger employees.

[30]    Respondent did not provide me with an accurate list of the job titles and ages of other employees who were terminated at the same time I was terminated, as required by the OWBPA to obtain a release of an ADEA claim.

[31]    Respondent's comments and conduct evidences a bias against older employees.

[32]    Respondent's age discrimination against me has caused me emotional distress.

[33]        **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and/or termination decisions, and/or who have been presented with a General Release and Waiver, which purported to be a general release of claims but which failed to comply with the OWBPA, in violation of the ADEA as amended by the OWBPA.**

B.  Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (55), in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a)**

   ____        Section 5.1 Subsection(s) _____

   ____        Section 5.2 Subsection(s) _____

   ____        Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

  **X**       **This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

9/13/2020
(Date Signed)

_Geraldine Carey_
(Signature)    Geraldine Carey

# Exhibit "2"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   **Geraldine Carey**
      ▮▮▮▮▮▮▮▮▮

From:   **Philadelphia District Office**
        **801 Market Street**
        **Suite 1000**
        **Philadelphia, PA 19107**

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60033** | **Damon A. Johnson,** **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

#### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*                                      November 19, 2021

**Jamie R. Williamson,**                           *(Date Issued)*
**District Director**

Enclosures(s)

cc:   **For Respondent:**

      **Dana E. Feinstein, Esq.**
      **Holland & Knight, LLP**
      **Dana.Feinstein@hklaw.com**

      **For Charging Party:**

      **Emily R. Derstine Friesen, Esq.**
      **Console Mattiacci Law**
      **derstinefriesen@consolelaw.com**

# Exhibit "3"

<div style="text-align:right; border:1px solid;">
Received

SEP 1 8 2020

PA Human Relations Commission
Philadelphia Regional Office
</div>

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:

LESLIE LEYBA

v.

RESPONDENT:

INTERNATIONAL SOS ASSISTANCE, INC.

Docket No. 202000915

1. The Complainant herein is:

    Name:       Leslie Leyba

    Address:    ███████████

2. The Respondent herein is:

    Name:       International SOS Assistance, Inc.

    Address:    3600 Horizon Blvd #300
                Trevose, PA 19053

3. I, Leslie Leyba, the Complainant herein, allege that I was subjected to unlawful discrimination because of my age (59), as set forth below.

### Discrimination

A. I specifically allege:

[1]     I was hired by Respondent on or about April 26, 2019.

[2]     My birth date is November ██, 1960, and I am age fifty-nine (59).

[3]     I consistently performed my job duties in a highly competent manner.

[4]     I last held the position of Coordinating Nurse.

[5]     I last reported to Mark Kelly (41[1]), Director of Nursing. Kelly reported to Daniel Slaim (48), Regional Medical Director. Slaim reported to Robert Quigley (62), Senior Vice President and Regional Medical Director.

[6]     On or about January 2019, I began reporting to Kelly.

[7]     I was the oldest Nurse employee directly reporting to Kelly.

[8]     I heard that Kelly stated that Respondent needed to get rid of the "old crew."

[9]     On or about April 23, 2020, in a phone call with Kelly and Jenna Watson, Human Resources, Respondent placed me on "furlough," effective immediately. The stated reason was that not enough employees volunteered to be placed on "furlough."

[10]    Respondent placed me on "furlough" because of my age.

[11]    Respondent assigned my job duties and responsibilities to younger employees. I was more qualified to perform my job duties and responsibilities than the younger employees to whom my job duties were assigned.

[12]    The following employees were retained and were not placed on "furlough." I was more qualified to perform all of these employees' positions.

        a.   Jenna DeFilippo (28), Coordinating Nurse;

        b.   Erica Stanhope (29), Coordinating Nurse;

        c.   Sonia Mejia (31), Coordinating Nurse;

        d.   Sarah Underwood (31), Coordinating Nurse;

        e.   Sarah Henderson (35), Coordinating Nurse;

        f.   Bridget Morris (37), Coordinating Nurse;

---

[1] All ages herein are approximations.

    g.   Carla Costa (36), Coordinating Nurse;

    h.   David Leitner (37) Coordinating Nurse;

    i.   Rochelle Graves (37), Coordinating Nurse;

    j.   Margaret DaLiosio (34), Coordinating Nurse;

    k.   Colin Descoteaux (34) Coordinating Nurse;

    l.   Samantha Sherlock (39), Coordinating Nurse;

    m.   Stacey Perry (49), Coordinating Nurse.

[13]    I heard that the following employers were brought back to work after being placed on "furlough." I was more qualified to perform all of these employees' positions.

    a.   Marissa Kozak (38), Coordinating Nurse;

    b.   Daniel Breen (38), Coordinating Nurse;

    c.   Jessica Dickerman (42), Coordinating Nurse;

    d.   Julie Clerkin (42), Coordinating Nurse;

    e.   Olu Awobifa (49), Coordinating Nurse.

[14]    I received no explanation, including the criteria, as to why I was not brought back to work after being placed on "furlough," and younger employees were.

[15]    Respondent did not bring me back to work after placing me on "furlough" because of my age.

[16]    On August 4, 2020, in a letter from Judi VanDerveer (48), Vice President Human Resources, and on a phone call with Kelly and Watson, Respondent terminated my employment, effective August 1, 2020. The stated reason was "business disruption caused by the COVID-19 pandemic."

[17]    Respondent terminated my employment because of my age.

[18]    When I was terminated, Respondent retained the following younger employees in positions for which I was as, if not more, qualified.

    a.  Jenna DeFilippo (28), Coordinating Nurse;

    b.  Erica Stanhope (29), Coordinating Nurse;

    c.  Sarah Underwood (31), Coordinating Nurse;

    d.  Sonja Mejia (31), Coordinating Nurse;

    e.  Colin Descoteaux (34), Coordinating Nurse;

    a.  Margaret DalJesio (34), Coordinating Nurse;

    b.  Sarah Henderson (35), Coordinating Nurse;

    c.  Carla Costa (36), Coordinating Nurse;

    d.  Rochelle Graves (37), Coordinating Nurse;

    e.  Bridget Morris (37), Coordinating Nurse;

    f.  David Leitner (37), Coordinating Nurse;

    g.  Marissa Kozak (38), Coordinating Nurse;

    h.  Daniel Breen (38), Coordinating Nurse;

    i.  Samantha Clerkin (39), Coordinating Nurse;

    j.  Julie Clerkin (42), Coordinating Nurse;

    k.  Jessica Dickerman (42), Coordinating Nurse;

    l.  Stacey Perry (49), Coordinating Nurse;

    m.  Olu Awobifa (49), Coordinating Nurse.

[19]    Respondent recently hired the following substantially younger employees in positions for which I was as, if not more, qualified.

    a.  Jenna DeFilippo (28), Coordinating Nurse.

b. Erica Stanhope (29), Coordinating Nurse;

c. Sonia Mejia (31), Coordinating Nurse;

d. Sarah Underwood (31), Coordinating Nurse;

e. Margaret DaLiosio (34), Coordinating Nurse;

f. Colin Descoteaux (34), Coordinating Nurse;

g. Carla Costa (36), Coordinating Nurse;

h. Bridget Morris (37), Coordinating Nurse;

i. Marissa Kozak (38), Coordinating Nurse;

j. Daniel Breen (38), Coordinating Nurse;

k. Samantha Sherlock (39), Coordinating Nurse;

l. Julie Clerkin (42), Coordinating Nurse.

[20] Respondent retained substantially younger employees when I was terminated.

[21] Respondent assigned my job duties and responsibilities to younger employees. I was more qualified to perform my position than the younger employees to whom Respondent assigned my job duties and responsibilities.

[22] I had no opportunity or option to remain employed with Respondent.

[23] I had no disciplinary or performance issues throughout my employment.

[24] Respondent recently terminated the following older employees: Geraldine Carey (55), Coordinating Nurse; Dawn Zaremski (50), Quality Nurse Practitioner.

[25] Respondent has replaced older employees with, and assigned older employees' job duties to, substantially younger employees.

[26]    Respondent did not provide me with an accurate list of the job titles and ages of other employees who were terminated at the same time I was terminated, as required by the OWBPA to obtain a release of an ADEA claim.

[27]    Respondent's comments and conduct evidences a bias against older employees.

[28]    Respondent's age discrimination against me has caused me emotional distress.

[29]    I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and/or termination decisions, and/or who have been presented with a General Release and Waiver, which purported to be a general release of claims but which failed to comply with the OWBPA, in violation of the ADEA as amended by the OWBPA.

B.    Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (59), in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    _X_    Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): _(a)_

_____    Section 5.1 Subsection(s) _____

_____    Section 5.2 Subsection(s) _____

_____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    __X__    This charge will be referred to the EEOC for the purpose of dual filing.

6.    The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

_9- 17-2020_
(Date Signed)

_Leslie Leyba_
(Signature)    Leslie Leyba

# Exhibit "4"

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Leslie Leyba**
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60032** | **Damon A. Johnson,** <br> **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]*

**Jamie R. Williamson,**
**District Director**

November 19, 2021
*(Date Issued)*

cc:  **For Respondent;**
**Owner/HR Manager**
**INTERNATIONAL SOS ASSISTANCE, INC.**
**3600 Horizon Boulevard, #300**
**Trevose, PA 19053**

**For Charging Party:**

**Emily R. Derstine Friesen, Esq.**
**Console Mattiacci Law**
**derstinefriesen@consolelaw.com**

# Exhibit "5"

Received

SEP 03 2020

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                                    :

DAWN ZAREMSKI                                   :        Docket No. 202000819

v.                                              :

RESPONDENT:                                     :

INTERNATIONAL SOS ASSISTANCE, INC.              :

1.  The Complainant herein is:

    Name:        Dawn Zaremski

    Address:     ███████████████████

2.  The Respondent herein is:

    Name:        International SOS Assistance. Inc.

    Address:     3600 Horizon Blvd #300
                 Trevose, PA 19053

3.  I, Dawn Zaremski, the Complainant herein, allege that I was subjected to unlawful discrimination because of my age (50) and age discrimination complaints, as set forth below.

### Discrimination

    **A. I specifically allege:**

    [1]        I was hired by Respondent on or about April 1, 2013.

    [2]        I had more than seven (7) years of service at Respondent.

    [3]        My birth date is September ██, 1969, and I am age fifty (50).

[4]      I consistently performed my job duties in a highly competent manner.

[5]      I last held the position of Quality Nurse Practitioner.

[6]      I last reported to Daniel Slaim (48[1]), Regional Medical Director, and Mark Crawford (52), General Manager. Slaim reported to Robert Quigley (62), Senior Vice President and Regional Medical Director.

[7]      On or about June 10, 2019, I began reporting to Slaim and Crawford.

[8]      I was one of the oldest Nurse employees directly reporting to Slaim and Crawford.

[9]      Before I began reporting to Slaim and Crawford, I reported to Mark Kelly (41), Director of Nursing.

[10]      In or about April or May 2019, I heard that Kelly told Lauri Romani (53), Senior Coordinating Nurse, that Respondent needed to get rid of the "older crew."

[11]      On or about April 30, 2019, in a meeting with David Owen (55), Vice President, Human Resources, he criticized me, told me that I was a "tyrant," and stated that, according to my Myers Briggs' personality profile, as I age, I become less tolerant of people, so maybe that was what was happening with me.

[12]      Following the above meeting, in separate conversations with Kelly and Slaim, I complained of Owen's age biased comment to me. They told me that they would talk with Owen.

[13]      Respondent failed to investigate my age discrimination complaint.

[14]      Respondent failed to remedy or prevent the age discrimination at Respondent.

---

[1] All ages herein are approximations.

[15]    On or about May 23, 2019, in a meeting with Owen, I was demoted from Nurse Manager to Quality Nurse Practitioner. The stated reason was that my management style was not what Respondent was looking for. Before the meeting, I had no indication that I would be demoted.

[16]    Respondent demoted me because of my age and/or my age discrimination complaints.

[17]    I was the only employee reporting to Kelly who was demoted.

[18]    In connection with my demotion, my job responsibilities were reduced, my direct reports were removed from me, and I had no opportunity for a bonus.

[19]    Respondent assigned a portion of my job duties and responsibilities to Raquel Zaborowski (31), Medical Trainer, and Lillian Rocha (35), Senior Coordinating Nurse.

[20]    On October 16, 2019, without explanation or having received a performance evaluation, I received a minimal merit increase.

[21]    Less qualified, younger and/or noncomplaining employees received higher merit increases than I received.

[22]    I received a minimal merit increase because of my age and/or my age discrimination complaints.

[23]    I complained to Slaim, Kelly, and Dayo Azeez (35), Human Resources, that I had been singled out ever since Owen made age biased comments to me and I complained about the same. I was told to stop complaining.

[24]    Respondent failed to investigate my age discrimination complaint.

[25]    Respondent failed to remedy or prevent the age discrimination at Respondent.

[26]    On November 12, 2019, in a meeting with Slaim and Kelly, they told me that my new position as Quality Nurse Practitioner did not justify my salary. I stated that Nurse employees that Respondent recently hired received higher merit increases than I received.

[27]    Respondent failed to compensate me as much as younger and/or noncomplaining employees were compensated.

[28]    Respondent compensated me less than younger and/or noncomplaining employees were compensated because of my age and/or age discrimination complaints.

[29]    On April 24, 2020, in a phone call with Crawford and Azeez, Respondent placed me on "furlough," effective immediately. The stated reason was that business was slow and my position was not critical.

[30]    Respondent placed me on "furlough" because of my age and/or my age discrimination complaints.

[31]    Respondent assigned my job duties and responsibilities to younger and/or noncomplaining employees. I was more qualified to perform my job duties and responsibilities than the younger and/or noncomplaining employees to whom my job duties were assigned.

[32]    The following employees were retained and were not placed on "furlough." I was more qualified to perform all of these employees' positions.

      a.    Jenna DeFilippo (28), Coordinating Nurse;

      b.    Sonia Mejia (31), Coordinating Nurse;

      c.    Erica Stanhope (29), Coordinating Nurse;

      d.    Sarah Underwood (31), Coordinating Nurse;

      e.    Lilian Rocha (35), Senior Coordinating Nurse;

      f.    Sarah Henderson (35), Coordinating Nurse;

g.  Bridget Morris (37), Coordinating Nurse;

h.  Carla Costa (36); Coordinating Nurse;

i.  David Leitner (37) Coordinating Nurse;

j.  Rochelle Graves (37), Coordinating Nurse;

k.  Margaret DaLiosio (34), Coordinating Nurse;

l.  Colin Descoteaux (34) Coordinating Nurse;

m.  Alina Maris (38), Senior Coordinating Nurse;

n.  Samantha Sherlock (39), Coordinating Nurse;

o.  Philip Curtis (42), Senior Coordinating Nurse;

p.  Amy Kervick (44), Senior Coordinating Nurse;

q.  Stacey Perry (49), Coordinating Nurse.

[33]     On April 24, 2020, in an email to Slain, I asked why I was selected to be placed on "furlough" while other employees in my department were not. I stated that I was able to be transferred to a Coordinating Nurse ("CN") position, as I was qualified for the position and had previously held that position. I stated that other Quality Assurance ("QA") employees were moved to other positions instead of being furloughed but I was not. I asked why I was not moved to another position for which I was qualified.

[34]     On April 27, 2020, in an email from Azeez, I was told the following: "Thoughtful consideration went into making the selections and positions were selected based on business need – whether the role is critical to the business at this time. Given the steep decline in activity, we needed to temporarily reduce our staffing levels. This is not a reflection of your performance. The QA Manager role is one that we can suspend temporarily. A re-assignment to a CN role is not practical as a number of CNs were also furloughed."

[35]    Respondent placed me on "furlough" instead of transferring me to another position for which I was qualified because of my age and/or my age discrimination complaints.

[36]    On or about July 22, 2020, I learned that the following employees were brought back to work after being placed on "furlough." I was more qualified to perform all of these employees' positions.

      a.   Marissa Kozak (38), Coordinating Nurse;

      b.   Daniel Breen (38), Coordinating Nurse;

      c.   Jessica Dickerman (42), Coordinating Nurse;

      d.   Julie Clerkin (42), Coordinating Nurse;

      e.   Olu Awobifa (49), Coordinating Nurse.

[37]    On July 22, 2020, in an email to Slaim, I stated that I had heard that several Coordinating Nurses, who had fewer years of service at Respondent than me, were brought back after being placed on "furlough," and asked why I was not brought back. I again stated that I was able to be transferred to a Coordinating Nurse position, as I was qualified for the position and had previously held that position.

[38]    On July 23, 2020, in an email from Slaim, he stated that each of my points was "well noted," and that he took them to human resources. He told me that he would let me know if there were any changes.

[39]    I received no explanation, including the criteria, as to why I was not brought back to work after being placed on "furlough," and younger and/or noncomplaining employees were.

[40]    Respondent did not bring me back to work after placing me on "furlough" because of my age and/or my age discrimination complaints.

[41]     On August 4, 2020, in a letter from Jodi VanDerveer (48), Vice President Human Resources, and a phone call with Azeez and Joshua Dozor (35), General Manager, Respondent terminated my employment, effective August 1, 2020. The stated reason was "business disruption caused by the COVID-19 pandemic."

[42]     Respondent terminated my employment because of my age and/or my age discrimination complaints.

[43]     When I was terminated, Respondent retained the following younger and/or noncomplaining employees in positions for which I was more qualified.

        a.   Jacqueline Reckling (29), Quality Consultant;

        b.   Jenna DeFilippo (28), Coordinating Nurse;

        c.   Erica Stanhope (29), Coordinating Nurse;

        d.   Sarah Underwood (31), Coordinating Nurse;

        e.   Sonja Mejia (31), Coordinating Nurse;

        f.   Colin Descoteaux (34), Coordinating Nurse;

        a.   Margaret DaLiosio (34), Coordinating Nurse;

        b.   Nicole Milan (34), Quality Lead;

        c.   Sarah Henderson (35), Coordinating Nurse;

        d.   Lilian Rocha (35), Senior Coordinating Nurse;

        e.   Vitlay Kin (36), Quality Manager;

        f.   Carla Costa (36), Coordinating Nurse;

        g.   Rochelle Graves (37), Coordinating Nurse;

        h.   Bridget Morris (37), Coordinating Nurse;

        i.   David Leitner (37), Coordinating Nurse;

j.   Marissa Kozak (38), Coordinating Nurse;

k.   Daniel Breen (38), Coordinating Nurse;

l.   Alina Maris (38), Senior Coordinating Nurse;

m.   Samantha Sherlock (39), Coordinating Nurse;

n.   Philip Curtis (42), Senior Coordinating Nurse;

o.   Julie Clerkin (42), Coordinating Nurse;

p.   Jessica Dickerman (42), Coordinating Nurse;

q.   Amy Kervick (44), Senior Coordinating Nurse;

r.   Stacey Perry (49), Coordinating Nurse;

s.   Olu Awobifa (49), Coordinating Nurse.

[44]    Respondent recently hired the following substantially younger employees in positions for which I was more qualified.

a.   Jenna DeFilippo (28), Coordinating Nurse;

b.   Erica Stanhope (29), Coordinating Nurse;

c.   Sonia Mejia (31), Coordinating Nurse;

d.   Sarah Underwood (31), Coordinating Nurse;

e.   Margaret DaLiosio (34), Coordinating Nurse;

f.   Colin Descoteaux (34), Coordinating Nurse;

g.   Carla Costa (36), Coordinating Nurse;

h.   Bridget Morris (37), Coordinating Nurse;

i.   Marissa Kozak (38), Coordinating Nurse;

j.   Daniel Breen (38), Coordinating Nurse;

k.   Samantha Sherlock (39), Coordinating Nurse;

1. Julie Clerkin (42), Coordinating Nurse.

[45]    Respondent retained substantially younger and/or noncomplaining employees when I was terminated.

[46]    I was the only employee directly reporting to Slaim who was terminated on August 4, 2020.

[47]    Respondent assigned my job duties and responsibilities to younger and/or noncomplaining employees. I was more qualified to perform my position than the younger and/or noncomplaining employees to whom Respondent assigned my job duties and responsibilities.

[48]    I had no opportunity or option to remain employed with Respondent.

[49]    I had no disciplinary or performance issues throughout my employment.

[50]    Respondent recently terminated the following older employees: Leslie Leyba (59), Coordinating Nurse; and Geraldine Carey (55), Coordinating Nurse.

[51]    Respondent has replaced older employees with, and assigned older employees' job duties to, substantially younger employees.

[52]    Respondent did not provide me with an accurate list of the job titles and ages of other employees who were terminated at the same time I was terminated, as required by the OWBPA to obtain a release of an ADEA claim.

[53]    Respondent's comments and conduct evidences a bias against older employees.

[54]    Respondent's comments and conduct evidences a bias against employees who engage in protected activity.

[55]    Respondent's age discrimination and retaliation against me has caused me emotional distress.

[56]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and/or termination decisions, and/or who have been presented with a General Release and Waiver, which purported to be a general release of claims but which failed to comply with the OWBPA, in violation of the ADEA as amended by the OWBPA.**

B.    Based on the aforementioned, I allege that Respondent has discriminated against me because of my age (50) and my age discrimination complaints, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    __X__    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a)__**

    _____    Section 5.1 Subsection(s) _____

    _____    Section 5.2 Subsection(s) _____

    _____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

      __X__       **This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

9|3|20
(Date Signed)

(Signature)    Dawn Zaremski

# Exhibit "6"

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Dawn Zaremski** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60034** | **Damon A. Johnson,**<br>**State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [X] More than 180 days have passed since the filing of this charge.

- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Jamie R. Williamson,*
**Jamie R. Williamson,**
**District Director**

November 19, 2021
*(Date Issued)*

cc:

**For Respondent:**
**Owner/HR Manager**
**INTERNATIONAL SOS ASSISTANCE, INC.**
**3600 Horizon Boulevard, #300**
**Trevose, PA 19053**

**For Charging Party:**

**Emily R. Derstine Friesen, Esq.**
**Console Mattiacci Law**
derstinefriesen@consolelaw.com